# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| QUANTEL LOTTS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07 CV 610 RWS (LMB) |
| | ) | |
| STEVE LARKINS,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the petition of Quantel Lotts for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

### Procedural History

Petitioner is presently incarcerated at Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri, pursuant to the judgment of the Circuit Court of St. Francois County, Missouri. See Resp't Ex. B at 90-92. On November 6, 2002, following a jury trial, petitioner was found guilty of one count of first degree murder and one count of armed criminal action. See id. Petitioner was sentenced to life imprisonment without probation or parole for the first degree murder count and a consecutive life sentence for the armed criminal action count. See id.

---

[1]Petitioner is presently incarcerated at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri. As such, Steve Larkins, Warden of the Eastern Reception, Diagnostic and Correctional Center, is the proper party respondent.

1

Petitioner raised the following four points on direct appeal of his convictions: (1) there was insufficient evidence to support the first degree murder conviction because the evidence demonstrated that petitioner did not cooly reflect before stabbing the victim; (2) the trial court erred in permitting hearsay evidence of the victim's desire to move out of his house; (3) the trial court failed to act sua sponte when the prosecutor misstated the facts to claim that petitioner threatened to kill the victim when this was not the evidence; and (4) the trial court failed to act sua sponte to stop the prosecutor's improper argument that asked the jury to convict petitioner because he was dangerous. See Resp't Ex. C. The Missouri Court of Appeals for the Eastern District of Missouri affirmed petitioner's convictions on January 20, 2004. See Resp't Ex. E.

On May 10, 2004, petitioner filed a pro se motion to vacate, set aside, or correct the judgment of the Circuit Court of St. Francois County, Missouri, pursuant to Missouri Supreme Court Rule 29.15. See Resp't Ex. F at 5-23. On August 17, 2004, after appointment of counsel, petitioner filed an amended motion. See id. at 27-44. Petitioner argued that he received ineffective assistance of counsel because trial counsel failed to call his brother, Dorell Lotts, to testify at his trial. See id. Petitioner's motion was denied on March 14, 2005. See id. at 46-51.

In his single point on appeal from the denial of post-conviction relief, petitioner argued that the motion court clearly erred in denying his post-conviction relief motion because trial counsel's failure to call Dorell Lotts at trial was unjustifiable as reasonable trial strategy and prejudiced petitioner's defense. See Resp't Ex. H. The Missouri Court of Appeals for the Eastern District of Missouri affirmed the motion court's denial of post-conviction relief on April 6, 2006. See Resp't Ex. J.

On March 30, 2007, petitioner, through counsel, filed a petition for a writ of habeas

corpus. (Doc. No. 1). On August 31, 2007, respondent filed a Response to Order to Show Cause. (Doc. No. 24). Petitioner filed a Reply. (Doc. No. 27). On January 8, 2008, the court denied petitioner's motion to stay and hold his petition in abeyance and granted petitioner thirty days to file an amended petition including only those claims he previously exhausted. (Doc. No. 28). On February 5, 2007, petitioner filed an Amended Petition raising the following four grounds for relief: (1) petitioner received ineffective assistance of counsel when trial counsel failed to present a coherent defense; (2) the State's closing argument contained a prejudicial misstatement of the evidence and improper argument concerning future dangerousness; (3) there was insufficient evidence of deliberation to support petitioner's conviction for first degree murder; and (4) the trial court improperly admitted hearsay testimony, in violation of the Confrontation Clause. (Doc. No. 31).

## Facts

On November 13, 1999, petitioner, who was fourteen years old, along with his younger brother Dorell and Michael Barton, spent the night with thirteen-year-old Teddy Thomure at the Thomure home in Leadington, Missouri. (Resp't Ex. A at 143, 147-48). Petitioner, Dorell, and their father, Charlie Lotts, lived with Michael Barton and Michael's mother, Tammy Summers, and petitioner and Michael considered themselves "brothers." (Id. at 149). Petitioner and Teddy Thomure had known each other since the fifth grade and were good friends, and Michael, who was seventeen, was the best friend of Teddy's older sister Chastity. (Id. at 143-44, 146-48, 284-85).

At approximately 9:30 or 10:00 a.m the following morning, petitioner, Teddy, and Dorell got up and ate breakfast. (Id. at 154-55). A little while later, petitioner and Michael got into an

argument while playing with a blowgun. Petitioner blew a dart at Michael but missed. Michael responded by blowing a dart that hit petitioner in the arm, causing him to bleed. (Id. at 155-60).

Petitioner began cursing, and Teddy's mother, Ginger, went downstairs to see what had happened. (Id. at 161-62, 261). Petitioner showed Ginger his wound and Ginger cleaned and bandaged it. (Id. at 162). Petitioner continued to curse and directed some curse words at Michael. (Id. at 163-64). Teddy and Ginger tried to get petitioner to calm down. (Id. at 163). Petitioner stopped breathing heavily, quit pacing, and sat down and listened to Teddy and Ginger. (Id. at 164-65). Petitioner appeared calmer, so Ginger went upstairs. (Id. at 165).

Petitioner continued to mumble and then got "fired up" again. (Id.). Petitioner grabbed Teddy's bow and arrow and went upstairs. (Id.). Petitioner drew back the bow and pointed it at Michael and said, "I'm going to kick your fucking ass." (Id. at 174, 176, 251-52, 288). Ginger's boyfriend, Bruce Dalton, grabbed the bow, hit petitioner in the head, and told petitioner to pack his things and go home. (Id. at 177-78, 251-52, 257, 288). Petitioner replied that his father was going to "whoop [Dalton's] ass," and then went downstairs to Teddy's room. (Id. at 177, 179, 252, 288). Petitioner "mouthed off" as he went downstairs and appeared very angry. (Id. at 252-53). Teddy accompanied petitioner and heard petitioner mumble and curse. (Id. at 180).

Ginger went downstairs, and petitioner told her he did not want to leave and would behave if he could stay at the house. (Id.). Ginger told petitioner he could stay if he would behave, and petitioner appeared happy. (Id. at 180-81). Mr. Dalton saw that Ginger had petitioner "pretty well calmed down," and petitioner apologized to Mr. Dalton and shook his hand. (Id. at 253-54). Shortly thereafter, Ginger and Mr. Dalton left the house and went to the store. (Id. at 181, 254).

Petitioner and Teddy were downstairs playing cards while Michael was upstairs making Teddy's younger sister Tara an omelet. (Id. at 181-82, 262). Petitioner became angry again and he got a knife from Teddy's two-knife set. (Id. at 182). The set contained a twelve-inch blade and six-inch Bowie knife, and petitioner took the larger knife. (Id. at 182-84). Petitioner began to walk upstairs but Teddy stopped petitioner and told petitioner to give him the knife. (Id. at 184). Petitioner complied but mumbled that he was "going to get that bastard." (Id.). Teddy then tossed the knife under his bed and told petitioner to calm down and that he was acting crazy. (Id.). Petitioner appeared to calm down again. (Id. at 185-86). As they walked upstairs, Teddy patted down petitioner's pockets to check for other weapons, and he found none. (Id. at 186-87).

Petitioner and Teddy started watching television in the living room. (Id. at 185-87). Tara, who was also watching television in the living room, saw petitioner tuck something into his sleeve that she believed was a knife. (Id. at 263-64). Petitioner saw Tara and put his finger to his mouth and said, "shhh." (Id. at 264). Tara went into the kitchen and told Michael that petitioner had a knife. Michael stated that he "wasn't afraid of [petitioner] with a knife." (Id.). Michael then walked into the living room and said something about the omelet he had made for Tara. (Id. at 188). Petitioner pulled a knife when Michael entered. (Id. at 227-28). Petitioner and Michael began "mouthing" at each other, got chest to chest and pushed each other. (Id. at 188). Michael said something like, "Let's take this outside," and he, petitioner, Teddy and Dorell stepped outside. (Id. at 189, 265-66). As soon as they walked outside, Tara shut and locked the door. (Id. at 267).

Petitioner and Michael went down to the sidewalk, while Teddy stood on the porch step and Dorell stood on the porch. (Id. at 193-96). Petitioner held a knife but Teddy saw no weapon

on Michael.  (Id. at 194, 198).  Petitioner's back was to Teddy, and petitioner and Michael were "mouthing," and pushing each other.  (Id. at 197-98).  Petitioner swung the knife and stabbed Michael in the left leg.  (Id. at 197, 199).  Michael bent down, and petitioner stabbed Michael in the left side of his chest.  (Id. at 199-200).  Michael stumbled backwards and fell, and petitioner turned and "took off" towards the house.  (Id. at 200-01).  Teddy helped Michael to the porch and tried to go inside the house, but the door was locked.  (Id. at 203-04).  Michael was eventually carried to the bathroom, where either Chastity or the Thomure family babysitter, Judith Lord, held a cloth to him in an effort to stop the bleeding.  (Id. at 206-09, 235, 271, 291, 315-16). Heather Snider, a Thomure family friend, called 911, and the dispatcher told Chastity how to perform CPR.  (Id. at 273, 292, 314).

Tara testified that she observed petitioner sitting in a rocking chair in the living room.  (Id. at 274).  Tara stated that petitioner looked like he had done something wrong and "he was really mad."  (Id.).  Tara testified that she saw petitioner lick one side of the bloody knife and heard petitioner say, "I finally killed the bastard."  (Id. at 275).

Teddy testified that he ran back and forth in the house "freaking out."  (Id. at 209).  He saw Chastity holding petitioner against the fireplace trying to get the knife from him.  (Id. at 210). Teddy heard petitioner say, "I finally got the bastard."  (Id. at 211).  Chastity was able to take the knife from petitioner.  (Id. at 293).

Heather Snider observed petitioner sitting in the rocking chair after Chastity took the knife from him.  (Id. at 317).  Ms. Snider testified that petitioner had a "blank look on his face," and did not "look upset in any way."  (Id.).

Leadington Chief of Police Cledith Wakefield was dispatched to the Thomure house at

around 12:25 p.m. (Id. at 328-29). As Chief Wakefield entered the house, he saw Michael on the floor and two women attempting CPR. (Id. at 330). Chastity told Chief Wakefield that petitioner had stabbed Michael. (Id. at 331). As Chief Wakefield approached petitioner, petitioner stated "I did it, and I'd do it again." (Id. at 333). Chief Wakefield then advised petitioner that he was under arrest for assault and handcuffed him. (Id. at 332-34).

Emergency personnel arrived and transported Michael to Mineral Area Hospital. (Id. at 343). Chief Wakefield went to Mineral Area Hospital after taking petitioner to the juvenile detention center. (Id.). Upon his arrival, Chief Wakefield learned that Michael had died. (Id.).

The next day, Dr. Russell Deidiker performed an autopsy of Michael. (Id. at 346, 368). Dr. Deidiker observed a stab wound to Michael's left chest and left hip area. (Id. at 370-71). The stab penetrated the heart to a depth of at least three-and-one-half inches and perforated the left lung. (Id. at 371-72, 374, 384). Dr. Deidiker expressed the opinion that Michael died from a stab wound to the chest. (Id. at 376).

## Discussion

### I. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529 U.S. at 413, 120 S.Ct. 1523. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." <u>Id.</u> Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409, 120 S.Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Id.</u> at 410, 120 S.Ct. 1522.

## II.    <u>Timeliness Under the AEDPA</u>

Respondent argues that the petition is untimely under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposed a one-year period of limitation on federal petitions for habeas corpus. The governing provision provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant

to the judgment of a State court."  28 U.S.C. § 2244(d)(1).  For purposes of the AEDPA, a judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Additionally, §2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  Further, "for purposes of § 2244(d)(2), 'an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.'"  Marx v. Gammon, 234 F.3d 356, 357 (8th Cir. 2000) (quoting Artuz v. Bennett, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000)).

Respondent argues that the statute of limitations for the filing of a habeas petition begins to run when the fifteen-day period for filing post-opinion motions in petitioner's direct appeal expired.  Petitioner contends that the time did not begin to run until the time 90-day period for seeking certiorari from the United States Supreme Court has expired.

The Eighth Circuit Court of Appeals has held that the "expiration of time for seeking [direct] review" does not include the 90-day period for filing for certiorari.  See Bishop v. Dormire, 526 F.3d 382, 384 (8th Cir. 2008); Riddle v. Kemna, 523 F.3d 850, 855 (8th Cir. 2008).  The statutory period began to run the day after the Missouri Court of Appeals issued its mandate.  This is because petitioner did not request review by the Missouri Supreme Court, which in turn barred review by the United States Supreme Court.  Because the United States Supreme Court could not have reviewed petitioner's direct appeal, the expiration of the time for seeking direct review does not include the 90-day period in which petitioner could have filed for certiorari with the United States Supreme Court.  See id.  The statute of limitations therefore began to run after

the mandate issued in petitioner's direct appeal on February 18, 2004. <u>See</u> Resp't Ex. K at 3. After the mandate was issued, 82 days that count toward the one-year statute of limitations passed before petitioner filed his motion for post-conviction relief on May 10, 2004.

The time during which a properly filed post-conviction relief motion is pending tolls the statute of limitations. 28 U.S.C. § 2244(d)(2). On April 27, 2006, the Missouri Court of Appeals issued its mandate in petitioner's post-conviction appeal. On March 30, 2007, petitioner filed his federal habeas corpus petition. The number of days which ran against the statute of limitations between the mandate issued in petitioner's post-conviction appeal and the date petitioner filed his habeas petition is 337. When added to the 82 days that elapsed between petitioner's direct appeal and collateral attack, 419 days passed. Petitioner's petition thus exceeds the one-year statute of limitations imposed by the AEDPA.

This untimeliness does not necessarily foreclose review of the merits of his petition. "Because § 2244(d)(1) is a statute of limitations and not a jurisdictional bar, it is subject to equitable tolling in appropriate circumstances." <u>Cross-Bey v. Gammon</u>, 322 F.3d 1012, 1014-15 (8th Cir. 2003). "[E]quitable tolling is proper when there exist extraordinary circumstances beyond a prisoner's control that made filing a timely petition impossible or when the respondent's conduct has lulled the petitioner into inaction." <u>Cross-Bey</u>, 322 F.3d at 1015. "The doctrine applies only when some fault on the part of the defendant has caused a plaintiff to be late in filing, or when other circumstances, external to the plaintiff and not attributable to his actions, are responsible for the delay." <u>Shoemate v. Norris</u>, 390 F.3d 595, 597 (8th Cir. 2004) (quoting <u>Flanders v. Graves</u>, 299 F.3d 974, 977 (8th Cir.2002)). "Because the doctrine is reserved for extraordinary circumstances, it gives the plaintiff an 'exceedingly narrow window of relief.'" <u>Id.</u>

(quoting <u>Jihad v. Hvass</u>, 267 F.3d 803, 805 (8th Cir.2001)).

Petitioner does not allege that any circumstances beyond his control caused him to file his petition late. Indeed, he offers no explanation for his delay.

Accordingly, the petition is barred by the statute of limitations.

## III.    <u>Petitioner's Claims</u>

The undersigned has already found that the petition is untimely. Even if petitioner's claims were not untimely, they fail on their merits as well.

### 1.    **Ground One**

In his first ground for relief, petitioner argues that he received ineffective assistance of counsel because trial counsel failed to call petitioner's brother, Dorell Lotts, as a witness at trial. Petitioner argues that Dorell's testimony would have supported three theories of defense: (1) petitioner did not cause the victim's death; (2) petitioner was unable to premeditate because he suffered from diminished capacity; and (3) petitioner acted in self-defense. Respondent contends that some aspects of this ground for relief are barred by procedural default, and the remainder are meritless.

In his post-conviction relief motion, petitioner argued that trial counsel provided ineffective assistance in failing to call Dorell Lotts as a witness at trial after having promised the jury Dorell Lotts' testimony on petitioner's defense of self-defense. <u>See</u> Resp't Ex. F at 29. Petitioner raised the same claim on appeal from the denial of post-conviction relief. <u>See</u> Resp't Ex. H at 24.

Respondent contends that, because petitioner did not present the claims that Dorell Lotts' testimony would have revealed that a third person killed the victim or that Dorell Lotts' testimony

would have supported petitioner's diminished capacity defense, petitioner has procedurally defaulted these claims. Petitioner claims that he properly presented his claims to the state courts.

It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. See 28 U.S.C. § 2254(b); Duvall v. Purkett, 15 F.3d 745, 746 (8th Cir. 1994). In addressing this issue, a federal court must give deference to state courts and should place great importance on state procedural rules. See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989). By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'" Id. (quoting Martin v. Salem, 801 F.2d 324, 333 (8th Cir. 1986) (internal citations omitted). A claim has been fairly presented when a petitioner has properly raised the "same factual grounds and legal theories" in the state courts which he is attempting to raise in his federal habeas petition. Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996). See Forest v. Delo, 52 F.3d 716, 719 (8th Cir. 1995); Flieger v. Delo, 16 F.3d 878, 884 (8th Cir. 1994).

The undersigned finds that petitioner has properly presented this ground for relief to the state courts. Petitioner raised the same factual grounds and legal theories in his post-conviction relief motion and in his appeal from the denial of post-conviction relief. Specifically, petitioner argued that trial counsel was constitutionally ineffective in failing to call Dorell Lotts to testify at trial. Although petitioner did not contend in state court that Dorell's testimony would have supported not only petitioner's self-defense theory but also petitioner's other two theories of defense, these arguments relate to the ways in which petitioner was prejudiced rather than the central legal theory or facts of the claim. As petitioner points out, all the facts necessary to this

claim were well-developed before the state courts. This is not a case in which petitioner merely raised a general ineffective assistance of counsel claim in state court. See Flieger, 16 F.3d at 884. Thus, this ground for relief is not procedurally defaulted.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his attorney failed to exercise the degree of skill and diligence a reasonably competent attorney would exercise under similar circumstances, and additionally, the petitioner must show that he was prejudiced by his attorney's action or inaction. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." Id. "Prejudice" is shown by a petitioner when it is demonstrated that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S. Ct. 2068. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Id. The petitioner must not only assert prejudice, but must affirmatively prove that prejudice was present. See id. at 693, 104 S. Ct. 2067. A habeas petitioner "must overcome the strong presumption that in the circumstances of his case 'the challenged action might be considered sound trial strategy.'" Seehan v. State of Iowa, 72 F.3d 607, 611 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 689, 104 S. Ct 2065).

Petitioner first contends that Dorell's testimony would have supported petitioner's self-defense theory. Specifically, petitioner argues that Dorell would have testified that Michael initiated the confrontation, that Dorell tried to take the knife away from petitioner but Michael told him to let him keep it, that Michael shoved and pushed petitioner before petitioner stabbed him, and that, after petitioner stabbed Michael once, he ran away in fear.

Trial counsel, Wayne Williams, testified at the evidentiary hearing held in connection with petitioner's post-conviction relief motion. Mr. Williams stated that he believed that Dorell's testimony would have been harmful to petitioner. See Resp't Ex. G at 34, 36. Specifically, Mr. Williams testified that Dorell testified that he thought Dorell's testimony would hurt petitioner's self-defense claim because Dorell testified in his deposition that petitioner swung a knife at the victim when the stabbing occurred, while earlier in the deposition he had testified that petitioner had previously told his step-mother that he did not swing the knife and that the victim "fell into the knife." Id. at 36.

The Missouri Court of Appeals held as follows with regard to this claim:

> It is undisputed that Williams knew: (1) of D[o]rell Lotts' existence, (2) that D[o]rell Lotts could be located, and (3) that D[o]rell Lotts would testify. Thus, the only issue is whether the testimony of D[o]rell Lotts would have produced a viable defense.
> In D[o]rell Lotts' deposition, he stated that the events surrounding the incident were as follows: Victim pushed [petitioner] once, [petitioner] pushed Victim back, Victim punched-pushed [petitioner] with both fists, and then [petitioner] stabbed Victim. This is merely evidence that Victim committed non-deadly attacks against [petitioner], which did not grant [petitioner] the privilege to use deadly force in stabbing Victim. Thus, D[o]rell Lotts' testimony would not have produced a viable defense of self-defense. Therefore, because [petitioner] cannot prevail on his claim of ineffective assistance of trial counsel, the motion court did not clearly err in denying [petitioner's] amended Rule 29.15 motion. Point denied.

Resp't Ex. J at 6.

The decision of the state courts is not contrary to or an unreasonable application of clearly established federal law. With respect to petitioner's defense of self-defense, the Missouri Court of Appeals properly applied Strickland and found that petitioner was unable to demonstrate prejudice, as Dorell's testimony would not have produced a viable defense of self-defense. In his deposition, Dorell testified that Michael pushed petitioner once, petitioner pushed Michael back,

Michael punched petitioner with both fists, and then petitioner stabbed Michael. See Deposition

of Dorell Lotts at p. 21. As the Missouri Court of Appeals held, this testimony merely establishes

that Michael used non-deadly force on petitioner, which did not justify petitioner's use of deadly

force. Further, trial counsel was able to present evidence of self-defense through his cross-

examination of the State's witnesses and was successful in getting a self-defense instruction

presented to the jury. Thus, petitioner is unable to demonstrate prejudice as a result of trial

counsel's failure to call Dorell Lotts to testify in support of petitioner's defense of self-defense.

Similarly, petitioner is unable to demonstrate prejudice as a result of trial counsel's failure

to call Dorell to testify in support of petitioner's defense theories of diminished capacity or that a

third person killed Michael. Petitioner claims that Dorell's testimony would have supported

petitioner's defense of diminished capacity because Dorell would have testified that when

petitioner came inside after the stabbing, he sat in a chair, rocking back and forth, and looked

confused. Defense counsel called an expert, Dr. Patricia Carter, who testified that petitioner

suffered from Intermittent Explosive Disorder, which prevented him from premeditating. See

Resp't Ex. A at 433-34. The State's expert, Dr. Richard Scott, testified on rebuttal that petitioner

did not suffer from Intermittent Explosive Disorder, but instead suffered from Conduct Disorder,

which does not rise to the level of a mental disease or defect in Missouri and did not diminish his

capacity to premeditate. See id. at 478-79, 482. In support of this conclusion, Dr. Scott cited

petitioner's history of being a runaway, staying out late, skipping school, fighting, use of a

weapon, frequent shoplifting, fire setting, abuse towards animals, cruelty to children, all of which

are criteria for Conduct Disorder. See id. at 489-91. In light of Dr. Scott's thorough expert

testimony that petitioner did not suffer from Intermittent Explosive Disorder, petitioner is unable

to demonstrate that the outcome of the trial would have been different had Dorell testified. Apparently, the jury believed Dr. Scott.

With regard to petitioner's theory that a third person caused Michael's death, petitioner claims that Dorell would have testified that he only saw petitioner stab Michael once. See Deposition of Dorell Lotts, p. 69. Teddy Thomure testified on behalf of the State that he observed petitioner stab petitioner twice-once in the left leg and once in the left side of his chest. See Resp't Ex. A at 197-200. Dr. Russell Deidiker, who performed an autopsy of Michael, testified that he observed a stab wound to Michael's left chest and left hip area. (Tr. 370-71). The stab penetrated the heart to a depth of at least three-and-one-half inches and perforated the left lung. (Tr. 371-72, 374, 384). Dr. Deidiker expressed the opinion that Michael died from a stab wound to the chest. (Tr. 376). In light of this evidence, petitioner cannot demonstrate that Dorell's testimony would have affected the outcome of the trial.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

### 2. Ground Two

In his second ground for relief, petitioner argues that the State's closing argument contained a prejudicial misstatement of the evidence and improper argument concerning future dangerousness.

Petitioner did not object to either of the prosecutor's statements during trial, nor did petitioner raise these claims in his motion for new trial. Respondent argues that petitioner's failure to object to the judge's comment at trial renders the claim procedurally barred in federal court and only available for plain error review by the Missouri Court of Appeals. Under Missouri Supreme Court Rule 30.20, claims of trial court error that are not raised at the trial level are only

reviewable for plain error. Petitioner sought plain error review from the Missouri Court of Appeals in his direct appeal. It is unclear whether the Missouri Court of Appeals reviewed these claims for plain error, as the Court did not issue an opinion explaining its decision. <u>See</u> Resp't Ex. E.

The Eighth Circuit has noted that "[t]here appears to be a decisional split within our Circuit on whether plain error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court." <u>Hornbuckle v. Groose</u>, 106 F.3d 253, 257 (8th Cir. 1997) (quoting <u>Mack v. Caspari</u>, 92 F.3d 637, 641 n. 6 (8th Cir. 1996). The court also explained that although it could not resolve the differing lines of opinion, it could choose which line of cases to follow. <u>See id.</u> The court in <u>Hornbuckle</u> chose to follow the line of cases allowing a Federal Court review of an otherwise defaulted claim for plain error. Under the plain error standard, habeas relief is warranted only if "manifest injustice resulted" from the alleged errors. <u>Mack</u>, 92 F.3d at 641. The court will review petitioner's claims for plain error.

Petitioner objects to two parts of the prosecutor's closing argument. Petitioner first objects to the prosecutor's statement that petitioner aimed a bow and arrow at Michael and said, "I'm going to kill your mother-fucking ass." (Resp't Ex. A at 529). The record reveals that Bruce Dalton testified that petitioner aimed a bow at Michael and stated, "I'm going to *kick* your fucking ass." (<u>Id.</u> at 251) (emphasis added).

Petitioner cannot demonstrate that the trial court's failure to <u>sua</u> <u>sponte</u> correct this portion of the State's closing argument resulted in "manifest injustice." First, the jurors were instructed that arguments are not evidence. <u>See</u> Resp't Ex. B at 78. Jurors are presumed to follow their instructions. <u>See</u> <u>United States v. Griffith</u>, 301 F.3d 880, 884 (8th Cir. 2002). There

is no evidence to the contrary.

Further, in light of the overwhelming evidence against petitioner, the prosecutor's statement had no effect on the outcome of the trial. The evidence presented at trial revealed that petitioner armed himself with various weapons during the course of the morning of the attack in an attempt to harm Michael. The evidence also demonstrated that petitioner fatally stabbed Michael in the chest after stabbing him in the leg. After the stabbing, petitioner made several statements indicating that he intended to harm Michael. Thus, petitioner's claim lacks merit.

Petitioner next argues that the prosecutor made an improper argument regarding future dangerousness. Petitioner first objects to the following statements made by the prosecutor during closing argument: petitioner had "[a] history of being abusive to other children, to other animals, to other people," and that petitioner is "a violent, abusive, and provocative person who likes to surprise people, who likes to strike the first blow." (Resp't Ex. A at 531-32). Petitioner next objects to the following statements made during the State's rebuttal argument: "He has violent acts against others. Like, he likes to surprise others, to provoke others, to be the first one to strike the blow, and use weapons." (Id. at 561). The prosecutor next argued as follows: That petitioner's nature is "driven by revenge...speaks volumes to the dangerousness of the defendant." (Id. at 561). Finally, the prosecutor stated, "[b]ecause of the dangerous person that he is, I ask that you find him guilty of murder in the first degree for the death of Michael and also for armed criminal action." (Id. at 562).

Petitioner's claim lacks merit. Although petitioner contends that the prosecutor made an improper argument regarding petitioner's future dangerousness, the prosecutor did not refer to any future crimes. The prosecutor made statements regarding petitioner's violent history, which

were relevant to the crimes with which petitioner was charged. Further, in light of the overwhelming evidence against petitioner, petitioner is unable to show that the prosecutor's statements had an effect on the outcome of the trial.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

### 3.      Ground Three

In his third ground for relief, petitioner argues that there was insufficient evidence of deliberation to support petitioner's conviction for first degree murder.

The standard for reviewing the sufficiency of the evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the United States Supreme Court held that the appropriate inquiry under due process for reviewing the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S. Ct. 2789. Further, "[t]he state is 'not required to rule out every hypothesis except that of guilt beyond a reasonable doubt.'" Flieger v. Delo, 16 F.3d 878, 883 (8th Cir. 1994) (quoting Perez v. Groose, 973 F.2d 630, 634 (8th Cir. 1992)). The federal court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and [] must defer to that resolution." Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994). This Circuit has "recognized that the verdict 'may be based in whole or in part on circumstantial evidence.' " Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996) (quoting United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996)).

Petitioner raised this claim in his direct appeal. The Missouri Court of Appeals denied

petitioner's claim.  See Resp't Ex. E.

Petitioner's claim that the evidence was insufficient for the jury to find deliberation is without merit.  Deliberation is defined as "cool reflection for any length of time no matter how brief."  Section 565.002(3) RSMo.  As previously discussed, the State presented ample evidence from which a reasonable jurors could have concluded that petitioner deliberated.  The evidence revealed that over the course of a morning, petitioner armed himself with various weapons in preparation for harming Michael.  (Resp't Ex. A at 163-65, 174, 176, 182-84, 197, 199-200, 227-28, 251-52, 263-65, 288-89).  Later that morning, petitioner swung a knife and stabbed Michael in the left leg.  (Id. at 197, 199).  After Michael bent down, petitioner stabbed the left side of Michael's chest.  (Id. at 199-200).  The fact the petitioner attempted to harm Michael all morning, and then stabbed him twice, demonstrates that petitioner deliberated.  Further, after the stabbing, Tara heard petitioner say, "I finally killed the bastard," and Teddy heard petitioner state, "I finally got the bastard."  (Id. at 211).  When Chief Wakefield approached petitioner, petitioner said, "I did it, and I'd do it again."  (Id. at 333).  Petitioner's statements made after the stabbing further demonstrate that petitioner deliberated.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

### 4.      Ground Four

In his fourth ground for relief, petitioner argues that the trial court improperly admitted hearsay testimony in violation of the Confrontation Clause.

During Heather Snider's direct examination, the State asked Ms. Snider whether Michael had ever expressed to Ms. Snider his desire to move out of his house.  (Resp't Ex. A at 312).

Defense counsel objected on relevance and hearsay grounds. (Id.). The State responded that the "relevance may go to motive." (Id.). The State argued that the testimony would not be hearsay because Ms. Snider was not asked for a specific statement. (Id.). The court overruled defense counsel's objection and the following colloquy occurred:

> [PROSECUTOR]: Did he ever give you any indication as to whether he had a desire to move out of the house?
>
> [MS. SNIDER]: Yes.
>
> [PROSECUTOR]: And was that his desire?
>
> [MS. SNIDER]: Yes.

Resp't Ex. A at 313.

Generally, questions concerning the admissibility of evidence are matters of state law, and the issue on habeas review is not whether the evidence was properly admitted under state law. See Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Evidentiary issues can, however, form the basis for habeas relief if the error constitutes an independent constitutional violation. See Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Id. (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. See Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

Petitioner raised this claim in his direct appeal. The State admitted that Ms. Snider's

testimony constituted hearsay but argued that petitioner was not prejudiced.  <u>See</u> Resp't Ex. D at 26.  The Missouri Court of Appeals rejected petitioner's claim.  <u>See</u> Resp't Ex. E.

Even if Ms. Snider's testimony constitutes hearsay, petitioner is unable to demonstrate prejudice.  Petitioner contends that the jury was left to speculate as to whether Michael wanted to move out of his home due to hostility between him and petitioner.  The prosecutor, however, did not state that Michael's desire to move out had anything to do with petitioner.  The jury could have speculated that Michael, who was seventeen, wanted to move out because he was unhappy with his parents or simply because he wanted to live on his own.  The prosecutor never suggested that there was hostility between petitioner and Michael and, in fact, even stated during closing argument, "There's no evidence of any history between the two of violence."  (Resp't Ex. A at 531).  As such, petitioner cannot show that the admission of Ms. Snider's testimony affected the outcome of the trial.

Accordingly, the undersigned recommends that petitioner's fourth ground for relief be denied.

## IV.    <u>Certificate of Appealability</u>

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right.  <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Hunter v. Bowersox</u>, 172 F.3d 1016, 1020 (8th Cir. 1999).  A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  <u>See</u> <u>Cox v. Norris</u>, 133 F.3d 565, 569 (8th Cir. 1997)(citing <u>Flieger v. Delo</u>, 16 F.3d 878, 882-83 (8th Cir. 1994)); <u>Tokar v. Bowersox</u>, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998).  In this case, petitioner has failed to make a substantial showing of the denial of a

constitutional right.  The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.


## **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the petition of Quantel Lotts for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied.**

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.


The parties are advised they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).


Dated this __26th__ day of January, 2010.


_Lewis M. Blanton_____

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE